UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEV N. SITKOVETSKIY and LYUDMILA BUDENNAYA, Plaintiffs, | : : : : |
| v. | : CIVIL ACTION NO. : 3-06-cv-01893 (JCH) |
| HOUSING AUTHORITY OF THE CITY OF NEW LONDON and U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT Defendants. | : : : : : AUGUST 20, 2007 : |

**RULING RE: DEFENDANT HUD'S RENEWED MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND PLAINTIFFS'
REQUEST TO TRANSFER TO HARTFORD [Doc. Nos. 22 & 9]**

**I.     Background**[1]

Pro se plaintiffs Lev N. Sitkovetskiy and Lyudmila Budennaya brought this suit against the defendants, the City of New London Housing Authority ("NLHA") and the Hartford Field Office of the United States Department of Housing and Urban Development ("HUD"), alleging that the defendants discriminated against them during the selection process for the Section 8 Program's waiting list. In a Ruling of March 23, 2007, the court granted HUD's Motion to Dismiss [Doc. No. 11] on sovereign immunity grounds, while giving the plaintiffs permission to file an amended complaint within thirty days of the Ruling. See Ruling at 4. The court also gave the plaintiffs 21 days to file their proof of service for the Housing Authority of the City of New London, or it would dismiss that action for lack of prosecution.

In response to the court's Ruling, one plaintiff, Lev Sitkovetskiy, filed a

---

[1]The court assumes familiarity with the facts. See Ruling Re: Defendant's Motion to Dismiss ("Ruling") at 1-2 [Doc. No. 18].

Disagreement with Court Document Ruling Re: Defendant's Motion to Dismiss ("Disagreement") [Doc. No. 19], in which he divided the Complaint into "two new Complaints." See Disagreement at 2. The first Complaint is against the NLHA, and the second Complaint is against Julie B. Fagan, the Director of HUD's Hartford Field Office in Connecticut. The plaintiffs, however, have not filed proof of service for the Housing Authority; thus, the court will dismiss the claims against it for lack of prosecution. The claims against Fagan essentially allege that she indirectly discriminated against Sitkovetskiy during the selection process for the Section 8 Program's waiting list. HUD has filed a renewed Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment, against Fagan [Doc. No. 22].

## II.   DISCUSSION

### A.   Amended Complaint

HUD first argues that the claims against Fagan should be dismissed because the plaintiffs failed to comply with the court's stated requirements for filing an amended complaint, as set forth in the court's prior Ruling. However, because the court is mindful that "'[a] pro se complaint is to be read liberally,'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.2000) (citations omitted), the court will construe Sitkovetskiy's Disagreement with attached "new Complaints" as an Amended Complaint. Although Sitkovetskiy may not entirely have complied with this court's requirements for amending his complaint, as set forth in the Ruling at 4, the court construes the pro se litigant's Disagreement liberally, and thus will construe it as an Amended Complaint, in which Sitkovetskiy changed the name of one of the defendants in order to redress the

2

jurisdictional defects of their previous Complaint against HUD.[2] Therefore, with Sitkovetskiy's Disagreement considered an Amended Complaint, HUD is no longer a defendant, and Julie Fagan, in her official capacity, is.

B.  **Jurisdiction**

Because Sitkovetskiy seeks equitable relief in his claims against Fagan, the court's jurisdiction is based on the Administrative Procedure Act ("APA").[3] Indeed, civil rights actions against HUD or HUD officials "seeking declaratory relief or injunctions generally have been brought without analysis of [12 U.S.C.] § 1702[4] or sovereign immunity, . . . since the review provisions of the Administrative Procedure Act are made applicable to agency action taken pursuant to civil rights laws by 42 U.S.C. § 2000d-2." Selden Apts. v. United States Dept. of Housing and Urban Dev., 785 F.2d 152, 157 (6th Cir. 1986). "Accordingly, as long as the civil rights action is not seeking damages, it is unnecessary to assert § 1702 as waiving HUD's sovereign immunity." Id. at 157-58.

Under the APA, Administrative Procedure Act:

---

[2]This "Disagreement"/Amended Complaint was signed by only on plaintiff, Sitkovetskiy, and thus the second plaintiff, Lyudmila Budennaya, no longer has a cause of action pending.

[3]Sitkovetskiy claims that jurisdiction is based on Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). See Plf.'s Memorandum of Disagreement with Defendant's Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment ("Mem. in Opp.") at 5 [Doc. No. 23], However, a Bivens action is one for damages for unconstitutional actions by federal officers in their individual capacity. See Armstrong v. Sears, 33 F.3d 182, 185 (2d Cir. 1994). Individual defendants "must be served in a Bivens case in accordance with Rule 4(e)." Id. at 186. In this case, the plaintiffs' Amended Complaint does not appear to seek damages from Fagan; there is also no evidence that Fagan was personally served. See Def.'s Memorandum in Support of Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment ("Mem. in Supp.") at 6 n.1. Thus, the court construes this action as one against Fagan in her official capacity as Director of HUD's Hartford Field Office.

[4]HUD Secretary may be sued concerning functions under the National Housing Act of 1934.

3

> [t]he reviewing court shall decide all relevant questions of law, interpret constitutional or statutory provisions, and determine the meaning or applicability of terms of an agency action. The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be–
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law. . . .

5 U.S.C. § 706(2).

### C. Merits[5]

Sitkovetskiy's claims against Fagan allege that she indirectly discriminated against him during the selection process for the Section 8 Program's waiting list by sending him letters approving all the steps of the NLHA, which allegedly ignored the Code of Federal Regulations ("CFR"), permitting the NLHA to ignore the CFR, and containing misinformation. See Disagreement at Complaint No. 3. Sitkovetskiy seeks to have the court order Fagan to discontinue her approval of the steps of the NLHA that violate the CFR and the NLHA's Administrative Plan. Id. Specifically, Sitkovetskiy claims that the NLHA violated 24 C.F.R. §§ 982.1,[6] 982.54(c),[7] 982.206(c),[8]

---

[5] HUD filed its motion as an alternative one under Rule 12(b) and Rule 56; however, the court will consider it under Rule 56, as a Motion for Summary Judgment, because Sitkovetskiy submitted exhibits in connection with his Memorandum in Opposition.

[6] This provision provides general information regarding Section 8 tenant-based assistance and the Housing Choice Voucher Program, which is "generally administered by State or local governmental entities called public housing agencies (PHAs)."

[7] "The PHA must administer the program in accordance with the PHA administrative plan."

[8] "Closing waiting list. If the PHA determines that the existing waiting list contains an adequate pool for use of available program funding, the PHA may stop accepting new applications, or may accept only applications meeting criteria adopted by the PHA."

4

982.207(a)(1)[9] and its Administrative Plan of 2004, and that Fagan approved or permitted such violations by the NLHA in her letters to him.

According to Sitkovetskiy, the NLHA violated his rights by ignoring the CFR and the admissions preferences expressed in the NLHA's 2004 Administrative Plan in assigning Section 8 applicants to the waiting list when it disregarded his age, low income, and vigilance in applying for Section 8 housing on the first possible day. Sitkovetskiy quotes the NLHA's 2004 Administrative Plan as listing preferences according to: (1) date and time; (2) residents who live/work in the NLHA's jurisdiction. See Plf.'s Loc.R.Civ.P. 56(a)2 Statement ("Plf.'s Stat.") at Ex. B(2). The Plan further indicates that applicants on the waiting list with the same preference status would be selected by date and time of application. Id. According to Sitkovetskiy, Fagan's letters of June 29, 2005, August 19, 2005, and January 11, 2006, indicated that the NLHA used a lottery system to select among applicants on the waiting list, while the Plan indicated otherwise, and they also only specified the local residency preferences. Id. Thus, he appears to argue that Fagan participated with the NLHA in violating 24 C.F.R. § 982.207(a)(1), which requires that the public housing authority's selection preferences be described in the Administrative Plan, because the NLHA's Administrative Plan of 2004 did not contain any language discussing "changing admission preferences including day and time of pre-application." See Plf.'s Mem. in Opp. at 9.

As of March 9, 2005, Sitkovetskiy was ranked number 1061 on the waiting list; however, as of January 25, 2006, he was moved to number 131 on the waiting list.

---

[9]"The PHA may establish a system of local preferences for selection of families admitted to the program. PHA selection preferences must be described in the PHA administrative plan."

See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at Ex. E. In a letter dated February 23, 2006, Fagan indicated the reason for this change in ranking: after the computer software used to process the waiting list failed to separate Preference from Non-Preference applications, the NLHA corrected its computer software and revised its Administrative Plan, and the NLHA is "now in compliance with their Section 8 waiting list and . . . all policies and procedures have been followed in accordance with the regulations." Id. Sitkovetskiy appears to argue that Fagan allowed the NLHA to violate the CFR and its Administrative Plan because this computer software could not separate Preference from Non-Preference applications.

However, the court finds that Fagan's letters indicate that the software problem was caused by the fact that there were over 3,000 applicants, and that the NLHA addressed this problem by having software programmers "redo its lottery system to ensure that the Preference and Non-Preference waiting list was established and running effectively and in conformance with its policies." See Plf.'s Stat. at Ex. B(8). The court does not find that Fagan's actions were arbitrary or capricious; indeed, there is nothing in Fagan's letters supporting an inference that she participated in any unlawful activity, directly or indirectly, when her letters simply responded to Sitkovetskiy's questions and referred any inquiries specific to the waiting list to the NLHA, which is given the responsibility to administer the Section 8 program pursuant to 42 U.S.C. § 1437(a)(1)(C).[10] Moreover, in light of the NLHA's revised Administrative

---

[10]The Congressional Declaration of Policy in the United States Housing Act specifically states that its policy is "to vest in public housing agencies that perform well, the maximum amount of responsibility and flexibility in program administration, with appropriate accountability to public housing residents, localities, and the general public." See 42 U.S.C. § 1437(a)(1)(C).

Plan, about which Sitkovetskiy does not provide evidence to the contrary,[11] it appears that Sitkovetskiy's request for relief through a court order that Fagan discontinue approving NLHA's alleged violations of its Administrative Plan would be moot.

With respect to Sitkovetskiy's claims that the NLHA accepted more than 3,000 applications, which he claims is much more than an "adequate pool for use of available program funding" pursuant to 24 C.F.R. § 982.206(c), and that Fagan permitted this violation, the court finds that Sitkovetskiy has not presented any evidence that Fagan was involved in determining the amount of applications the NLHA chose to receive. Indeed, all of Fagan's letters specifically state that, because it was the NLHA's responsibility to administer this program, he should contact the NLHA regarding questions relating to the Section 8 program. See, e.g., Def.'s Stat. at Ex. A. The court finds that, pursuant to 42 U.S.C. § 1437(a)(1)(C), Fagan accurately represented to Sitkovetskiy that, because "the NLHA has responsibility to administer this program," it would determine how to administer the allocation of Section 8 vouchers. Id.

Finally, Sitkovetskiy appears to argue that the NLHA, with Fagan's indirect participation through her letter of August 14, 2006, unlawfully contracted out the administration of its Housing Choice Voucher program to a private organization. Id. at Ex. F. However, there is nothing arbitrary or capricious about giving private contractors responsibility to run government programs, as indeed private contractors are involved in

---

[11] Sitkovetskiy has also not provided evidence that the NLHA could not revise its own Administrative Plan. Cf. Riverkeeper, Inc. v. U.S. E.P.A., 475 F.3d 83, 117 (2d Cir. 2007) ("[W]e typically owe considerable deference to an agency's construction of its own regulation.").

7

much that the government does.[12]

Therefore, the court finds nothing in Fagan's letters that would support Sitkovetskiy's claims that Fagan indirectly or directly discriminated against him by permitting the NLHA to violate the CFR. The court finds that Sitkovetskiy has not come forward with sufficient evidence that Fagan's letters permitted or encouraged the NLHA's to ignore the CFR or its Administrative Plan; instead, her letters are merely responding to Sitkovetskiy's numerous inquiries.

### III. CONCLUSION

For the foregoing reasons, HUD's Motion to Dismiss, or in the Alternative, for Summary Judgment **[Doc. No. 22]** is GRANTED. The claims against the NLHA are DISMISSED for lack of prosecution, although the plaintiffs are given permission to file, within 10 days of this Ruling, a motion to re-open if they can show that they have in the past served the NLHA. Further, the plaintiffs' request to transfer this action to a judge in Hartford is DENIED **[Doc. No. 9]**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 20th day of August, 2007.

/s/Janet C. Hall
Janet C. Hall
United States District Judge

---

[12]As just one of many examples from a recent case, Magellan Health Services, Inc. is a private company that administers the United States Postal Service's Employee Assistance Program under a contract with the United States Government. Rosado v. Potter, 2007 WL 30864, at *1 (D. Conn. 2007).